UNITED STATES of America,

v.

Pedro SERRANO, a/k/a/ "Louis Ortiz," Defendant.

**16-cr-169 (WHP)**

United States District Court, S.D. New York.

Signed June 14, 2016

408

David William Denton, Jr., United States Attorney's Office, New York, NY, for United States of America.

Annalisa Miron, Amy Gallicchio, Federal Defenders of New York, New York, NY, for Pedro Serrano.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, United States District Judge:

In its June 9, 2016 Memorandum and Order, this Court reserved judgment on various motions in limine. (ECF No. 37.) On June 12, 2016, Defendant filed two additional motions in limine and renewed his motion to suppress evidence. (ECF No. 44–45.) At the June 13, 2016 final pretrial conference, the parties made additional arguments regarding their motions and supplemented the record. The parties' motions in limine are granted in part and denied in

part.[1] Defendant's motion for a suppression hearing is granted, and will be held prior to Officer Cortes's testimony at trial.

## DISCUSSION

### I. Renewed Suppression Motion

On June 12, 2016, the Government provided Defendant with 3500 material for NYPD Officer Karlina Cortes, the affiant for the October 30, 2015 warrant authorizing a search of 80 East 110th Street, Apt. 20B (the "Apartment"). (ECF No. 45; ECF No. 20-8.) That material included notes from the Government's May 17, 2016 interview with Officer Cortes, in which she stated that she made a follow-up visit to the Apartment after the warrant was issued, but before it was executed. Evidently, while "check[ing the] door" of the Apartment, Officer Cortes heard Shalaysia Centry inside, called her, and asked if the gun was in the closet. The Government's attorneys then drew an arrow to the phrase "not there." (ECF No. 45-1, at 2.)

▮ A warrant may lack probable cause and become "stale" when "the evidence supporting it is not 'sufficiently close in time to the issuance of the warrant.'" United States v. Raymonda, 780 F.3d 105, 114 (2d Cir.2015). To determine whether the evidence underlying the warrant has become "stale," a court may assess the "age of the information in the affidavit" and the "nature of the conduct alleged to have violated the law." United States v. Ortiz, 143 F.3d 728, 732 (2d Cir.1998). "[T]he warrant must be evaluated 'on the basis of the facts of each case.'" Raymonda, 780 F.3d at 114.

According to the October 30, 2015 search-warrant affidavit, Centry asserted

---

1. Defendant may also seek to introduce Andy Serrano's recorded Rikers Island calls after the Government rests. And moments ago, Defendant made its proposed supplemental submission regarding testimony on cell-site surveys. This Court reserves judgment on those issues.

that Defendant retrieved a black revolver from his bedroom closet and threatened Centry with it, then walked into the living room, where he removed the bullets and cleaned the gun. (ECF No. 20-8, at 3.) The affidavit neither represented that Defendant returned the gun to the bedroom closet, nor that the gun would only be found there. And the search warrant authorized the NYPD to search for "[a]ny and all firearms … [and a]ny and all ammunition" throughout the Apartment, including "[a]ny and all containers, including safes … [and a]ny and all containers or other boxes in which ammunition [could] be placed." The fact that a gun was not present in one part of the Apartment does not necessarily make the warrant, as a whole, stale.

 Nonetheless, at the June 13, 2016 pre-trial conference, Defendant's counsel proffered that Officer Cortes's phone call lasted at least ten minutes, and that a prior Government attorney noted that Cortes gave Centry specific instructions regarding a safe found in one of the closets. Accordingly, this Court will conduct a narrowly circumscribed hearing to address the scope of the search Centry conducted at Officer Cortes's behest. That hearing will be conducted prior to Officer Cortes's testimony at trial.

## II. Defendant's Motion In Limine Regarding the Bulletproof Vest

This Court dismissed Count II of the Indictment, which charged Serrano with being a violent felon in possession of body armor, but not the requisite jurisdictional element of interstate commerce. (See ECF No. 38.) The Government does not intend to supersede. (ECF No. 43.) Accordingly, Serrano now moves to preclude evidence of the bulletproof vest recovered from the Apartment pursuant to Federal Rules of Evidence 401, 403, and 404(b).

 With Count II dismissed, the bulletproof vest appears to be minimally probative of the remaining issue, i.e. whether Serrano knowingly possessed ammunition. And it is not necessary background for the Government's case regarding the ammunition because, among other things, it was found in a different closet from the vest. Moreover, testimony and evidence concerning a bulletproof vest could lead the jury to hypothesize a connection to violent crime generally, particularly because the jury will learn of Serrano's felony conviction. Accordingly, evidence regarding the bulletproof vest should be excluded because it is minimally probative and could create a substantial risk of unfair prejudice. See Fed. R. Evid. 403.

## III. Defendant's Motion in Limine to Preclude Cross-Examination Regarding Serrano's Prior Conviction

Defendant seeks to preclude the Government from using Serrano's 1996 robbery conviction to impeach his character for truthfulness if he chooses to testify. Relatedly, Defendant seeks to preclude the Government from cross examining him regarding his alleged use of the alias "Louis Ortiz" in connection with that robbery.

 Because Serrano's release from confinement occurred more than 10 years ago, the Government may not impeach Serrano with evidence of that conviction unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The Government's attempt to introduce evidence of Serrano's use of an alias in connection with that crime is governed by Federal Rule of Evidence 608(b), which establishes that courts may permit specific instances of witness's conduct to "be inquired into if they are

probative of the character for truthfulness or untruthfulness" of the witness.

The potential prejudicial effect of permitting cross examination regarding Serrano's prior conviction is obvious. His robbery conviction involved the "display of what appeared to be a firearm," and its discussion at cross examination could lead a jury to infer improperly a connection between his old case and the current indictment. And while the jury will inevitably become aware of that conviction since it is an element of Count I of the Indictment, there is considerably more prejudice in cross examination on the subject when compared with an unadorned acknowledgment of his prior felony conviction. Moreover, the Government has not made a showing that the probative value of such testimony would substantially outweigh any prejudicial effect. While "theft crimes ... bear on a witness's propensity to testify truthfully," they are "not crimen falsi that are automatically admissible under Rule 609(a)(2)." United States v. Estrada, 430 F.3d 606, 621 (2d Cir.2005). Moreover, "the Second Circuit[ has been] inclin[ed] to preclude the discussion of a witness's prior commission of violent crimes because of such crimes' lack of relevance to the issue of the witness's veracity." United States v. Agostini, 280 F.Supp.2d 260, 262 (S.D.N.Y. 2003); see also Estrada, 430 F.3d at 621 (noting that "crimes of violence ... may bear so marginally on honesty or veracity, depending on the circumstances of those crimes, as to justify exclusion [even] under [the less exacting standard of] Rule 609(a)(1).""). As previously discussed, Serrano's robbery conviction may be categorized as a crime of violence. See N.Y. Penal Law § 160.00 ("Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person ...."). Accordingly,

Serrano's motion in limine to preclude cross examination into the facts underlying his robbery conviction is granted under Federal Rule of Evidence 609(b).

However, Rule 608 is more inclusive than Rule 609(b), and "[c]ourts in the Second Circuit have consistently held that a witness' use of false names or identities is the proper subject of cross-examination under Rule 608." See Jean–Laurent v. Hennessy, 840 F.Supp.2d 529, 552 (E.D.N.Y.2011); see also Williams v. McCarthy, No. 05–cv–10230, 2007 WL 3125314, at *3 (S.D.N.Y. Oct. 25, 2007) ("A number of courts in this Circuit have held that a witness' use of false names or identities is the proper subject of cross-examination under Rule 608."). Accordingly, Serrano's motion to preclude questioning regarding the use of an alias is denied. Such cross examination may refer to the use of an alias in connection with a prior crime. But the Government may not probe the details of that crime.

## IV. Evidence Regarding Andy Serrano

■ The Government seeks to preclude Defendant from introducing statements made by Andy Serrano in two written confessions to NYPD officers on August 1, 2012, and statements at a suppression hearing during the prosecution of that case. Defendant contends that these are admissible hearsay because they are statements against penal interest. That exception applies when a declarant is unavailable and his statement is one that:

 (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to ... expose the

declaration to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(a), 804(b)(3). Here, because Andy Serrano's attorney has represented that he would "invoke[ ] his Fifth Amendment right not to testify . . . [he] is an unavailable witness under Fed. R. Evid. 804(a)(1). United States v. Desena, 260 F.3d 150, 158 (2d Cir.2001).[2]

A. Statements to Law Enforcement

Defendant seeks to offer two written statements that Andy Serrano made to law enforcement on August 1, 2012, when he and a female companion, "Christina," were arrested based on an anonymous tip. In one statement, Andy Serrano confessed to NYPD Detective Puga that he stole a $1,000 gold chain from someone at gunpoint. In another, Andy Serrano confessed to NYPD Officer Santiago that when arrested, he was concealing a "357 smith wesson model loaded with '6' rounds of ammo" in Christina's "brown leather coach bag 'purse'" so that he could sell it. Among other things, the statements tended to expose Andy Serrano, who was a convicted felon, to criminal liability for illegal possession of firearms and an armed robbery.

■ Admission of Andy Serrano's statement that he robbed someone at gunpoint would violate Rule 403. Whether Andy Serrano did so is of little relevance to the question of whether he placed a firearm or ammunition in the Apartment prior to November 2015. And the relevance of that statement is substantially outweighed by the inflammatory effect on the jury of an unrelated incident in which Andy Serrano used a firearm to commit a robbery.

The remaining question is whether the other statement to law enforcement is supported by circumstances that would "clearly indicate" trustworthiness. "While the court does not have to conclude that the statements sought to be admitted were surely true," a court must "assure itself that there are, at least, clear indicia of reliability" to such testimony." United States v. Doyle, 130 F.3d 523, 543 (2d Cir.1997). A court should "inquire[ ] whether each statement" that is proffered was "truly self-inculpatory," which can be a "fact-intensive inquiry." See Williamson v. United States, 512 U.S. 594, 601, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

■ In the other statement, Andy Serrano confesses, against his penal interest,

**2.** Pedro Serrano seeks to introduce these statements to establish that the ammunition he is being charged with possessing actually belonged to his brother Andy Serrano. "[A] defendant has a right to attempt to establish his innocence by showing that someone else did the crime [if] his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted alternative perpetrator." Wade v. Mantello, 333 F.3d 51, 61–62 (2d Cir.2003) (citation omitted); see also Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (establishing that a court's rigid application of hearsay rules to preclude evidence of a properly established third-party culpability defense may violate a Defendant's constitutional right to a fair trial). Here, the Government has disclosed that "the ammunition [was found] in a gray plastic container of the floor of the closet, underneath a laundry bag that appeared to contain older purses." As discussed below, Andy Serrano's self-inculpatory statements imply that he used women's purses stored in that closet to transport firearms. Therefore, Pedro Serrano has demonstrated "a nexus between the crime charged and the asserted alternative perpetrator." Wade, 333 F.3d at 62.

to a crime—possession of a firearm by a convicted felon. That confession is worthy of credit because it specifically disclaims that "Christina" bore any responsibility for the firearm, and "[s]o much of a statement as simply implicates the defendant in a crime is generally trustworthy, for 'people do not ordinarily make statements damaging to themselves unless they are true.'" United States v. Matthews, 20 F.3d 538, 545 (2d Cir.1994). The statement invokes none of the concerns attendant to confessions that "implicate[ ] someone else." See Williamson, 512 U.S. at 601, 114 S.Ct. 2431. Further, the statement is, at least for the purposes for which Defendant offers it, corroborated by Andy Serrano's statements at the suppression hearing and at Rikers Island. And the Government has not identified any unfair prejudice that would outweigh its probative value to the third-party culpability defense. See Fed. R. Evid. 403.

The Government does not explain why it would be in Andy Serrano's interest to unnecessarily implicate himself, but argues that the statement is unreliable nonetheless. Certainly, an absent declarant's credibility is a "consideration pertinent to the probative value of his or her testimony." Doyle, 130 F.3d at 302. Where a hearsay declarant gives one story—and later changes it—there may be reason to doubt a statement's reliability. See, e.g., United States v. Bahadar, 954 F.2d 821, 829 (2d Cir.1992) (statements were "all over the place," including "repeated changes" in the story that would "properly make any district judge suspicious of the statement's reliability"); United States v. Doyle, 130 F.3d 523, 542 (2d Cir.1997) (declarant later "expressly recanted in a stipulation executed as part of [a] corporate plea agreement").

The Government relies principally on Judge Duffy's finding that Andy Serrano was "generally non-credible" at a suppression hearing regarding his August 1, 2012 arrest. But Judge Duffy's conclusion—that Andy Serrano's comments were "thoroughly inconsistent and therefore difficult to credit"—related to the question of who had an "expectation of privacy" in his companion's purse. Memorandum and Order Denying Motion to Suppress, ECF No. 70, at 19, 28, United States v. Andy Serrano, 13-cr-566 (S.D.N.Y. July 20, 2015) ("Suppression Order"). Judge Duffy refused to credit Andy Serrano's protestations that Christina's purse was "his," and therefore that he had standing to challenge the search, relying on a line of cases under which Andy Serrano might have "owned" the purse, but lost any expectation of privacy by "relinquish[ing] custody" over it to a third person. (Suppression Order, at 31.) By contrast, Judge Duffy's conclusion validated the credibility of the confessions the Government now seeks to exclude, finding that Andy Serrano gave the August 1 confession voluntarily, that he "knowingly and voluntarily" waived his Miranda rights, and that his will was not "overborne" by law enforcement coercion, particularly in light of "[Andy] Serrano's background [and] experience with the criminal justice system." (Suppression Order, at 34.)

## B. Suppression Hearing Statements

Defendant will also seek to offer Andy Serrano's statements at the suppression hearing. The Government argues that statements made during the hearing were not statements against interest under Federal Rule of Evidence 804(b)(3) because "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt." Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). But an 804(b)(3) analysis is unnecessary, because

Andy Serrano's statements from the hearing are admissible as former testimony under Federal Rule of Evidence 804(b)(1). Rule 804(b)(1) permits introduction of "[t]estimony [from an unavailable witness] that: (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had ... an opportunity and similar motive to develop it by direct, cross-, or redirect examination." The Government argues that it lacked opportunity and similar motive to develop the testimony.

■ "The proper approach ... in assessing similarity of motive under Rule 804(b)(1) [is to] consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." United States v. DiNapoli, 8 F.3d 909, 914–15 (2d Cir. 1993). The key question is whether the issues in both proceedings were "sufficiently similar to assure that the opposing party had a meaningful opportunity to cross-examine when the testimony was first offered." United States v. Wingate, 520 F.2d 309, 316 (2d Cir.1975). Factors such as "[t]he nature of the two proceedings" (i.e. "what is at stake and the applicable burden of proof") as well as "the cross-examination at the prior proceeding" (i.e. "what was undertaken and what was available but forgone") are "relevant though not conclusive on the ultimate issue of similarity of motive." DiNapoli, 8 F.3d at 914–15.

At the suppression hearing, the Government sought to establish, among other things, that Andy Serrano did not possess

the purse and therefore lacked an expectation of privacy in it. When Andy Serrano testified that the purse was stored in his parents' closet and used to transport a firearm, the Government had both the opportunity and motive to cross examine Andy Serrano on all aspects of his testimony as to ownership of the purse and firearm, including its storage in that closet. Accordingly, the Government's motion to preclude the suppression hearing testimony is denied.

### C. Judgments of Conviction

■ Defendant seeks to offer Andy Serrano's 2005 and 2012 judgments of conviction for firearms offenses.[3] Those judgments are relevant because they tend to make Defendant's theory that Andy Serrano possessed the ammunition more probable. Fed. R. Evid. 401. While the convictions preceded the conduct with which Pedro Serrano is charged, that fact neither "substantially outweigh[s]" their evidentiary value nor presents substantial risk of jury confusion, as long as they are offered with other non-speculative evidence regarding Andy Serrano. See Fed. R. Evid. 403. And the existence of a judgment may be excepted from the hearsay rule as long as it meets the requirements of a "public record." See Fed. R. Evid. 803(8); United States v. Gotti, 641 F.Supp. 283, 290 (E.D.N.Y.1986) (entry of a criminal judgment is a public record); 30B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 7063, n.3 ("A judgment of conviction of someone other than the accused may be admissible in a criminal case under Rule 803(8) when offered for a purpose other than to prove facts essential to sustain the judgment

---

**3.** Defendant also sought to offer the accompanying criminal complaints. At June 12, 2016 final pre-trial conference, Defendant con-

ceded that these complaints were inadmissible hearsay.

[under 803(22) ].") (citing United States v. Breitkreutz, 977 F.2d 214 (6th Cir.1992)).

## CONCLUSION

For the foregoing reasons, the parties' motions in limine are granted in part or denied in part. Defendant's motion for a suppression hearing is granted. The Clerk of Court is directed to terminate all pending motions.

SO ORDERED: